**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL LA HART and KATHERINE LA HART; JERRY ZACHARATOS and JUSTINE ZACHARATOS; CHRISTOPHER GROVER and ANDREA GROVER, | Civil Action No. _____ |

*Plaintiffs*,

v.

SUNOCO PIPELINE L.P.; ENERGY TRANSFER LP; ENERGY TRANSFER (R&M) LLC; ENERGY TRANSFER MARKETING & TERMINALS L.P.; DELTA AIR LINES, INC.; EPSILON TRADING, LLC; MONROE ENERGY, LLC; PBF ENERGY INC.; PBF HOLDING COMPANY LLC; PRECISION PIPELINE LLC; MASTEC, INC.; NATURAL ENERGY FIELD SERVICES, LLC; SHAW PIPELINE SERVICES INC.; CORRPRO COMPANIES, INC.; AZURIA WATER SOLUTIONS, INC.; BARR AIR PATROL, LLC; BAKER HUGHES COMPANY; ROSEN SWISS A.G. d/b/a ROSEN USA,

*Defendants*.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1453 and 1446, Defendants Delta Air Lines, Inc. ("Delta"), Epsilon Trading, LLC ("Epsilon"), and Monroe Energy, LLC ("Monroe") (together, the "Delta Defendants"); PBF Energy Inc. ("PBF Energy") and PBF Holding Company LLC ("PBF Holding") (together, the "PBF Defendants"); MasTec, Inc. ("MasTec") and Precision Pipeline LLC ("Precision"); Barr Air Patrol, LLC ("Barr"); Baker Hughes Company ("Baker Hughes"); Shaw Pipeline Services Inc. ("Shaw"); Natural Energy Field Services, LLC ("NEFS"); and Energy

1

Transfer Marketing and Terminals L.P. ("ETMT") (all such Defendants together, the "Removing Defendants"), by and through their undersigned counsel, respectfully submit this Notice of Removal of this Action from the Court of Common Pleas of Philadelphia County, Pennsylvania, where it is now pending as Case No. 250303655 ("Underlying State Court Action") to the United States District Court for the Eastern District of Pennsylvania.

This removal is based on the following grounds:

## INTRODUCTION

1. On March 27, 2025, Plaintiffs Daniel La Hart and Katherine La Hart initiated a putative class action complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case No. 250303655 (the "Original Complaint") against Defendants Sunoco Pipeline L.P. ("SPLP"), Energy Transfer LP ("Energy Transfer"), and Energy Transfer (R&M) LLC ("R&M"), (together with ETMT, the "Energy Transfer Defendants").

2. Pursuant to 28 U.S.C. § 1446(a), a copy of the Docket Sheet and copies of all process, pleadings, and orders served to date upon Defendants in the Underlying State Court Action are attached as Exhibit A.

3. On January 15, 2026, Plaintiffs Daniel La Hart and Katherine La Hart, Jerry Zacharatos and Justine Zacharatos, and Christopher Grover and Andrea Grover ("Plaintiffs") filed the Second Amended Complaint ("SAC").  A true and correct copy of the SAC is attached hereto as Exhibit C.

4. The SAC added four additional Plaintiffs as putative class representatives and *fifteen* additional Defendants.

5. Removing Defendants now properly remove this Action under CAFA.

6.      By filing this Notice of Removal, the Removing Defendants do not waive, and expressly reserve, their rights to object to service of process, the sufficiency of process, jurisdiction over the parties, or venue, and to assert any defenses and objections to which they are entitled.[1]

## REMOVAL IS TIMELY

7.      Plaintiffs' affidavits of service reflect that served the Delta Defendants, the PBF Defendants, MasTec, Azuria, Barr, Baker Hughes, and Shaw with the SAC on January 21, 2026; Defendant NEFS on January 22, 2026; Defendants CorrPro and Precision on January 23, 2026; Defendant Rosen on January 29, 2026; and Defendant ETMT on January 30, 2026. True and correct copies of the Affidavits of Service are contained in Exhibit A at pages 304 to 321.

8.      The last day to file this Notice of Removal is thirty (30) days after receipt of the Action by *each* Defendant. *See* 28 U.S.C. § 1446(b)(1); *Delalla v. Hanover Ins.*, 660 F.3d 180, 189 (3d Cir. 2011). Thus, the deadline to file this Notice of Removal is:

      A.      February 20, 2026 for the Delta Defendants, the PBF Defendants, MasTec, Azuria, Barr, Baker Hughes, and Shaw;

      B.      February 23, 2026 for Defendants NEFS, CorrPro, and Precision;

      C.      February 28, 2026 for Defendant Rosen; and

      D.      March 2, 2026 for Defendant ETMT.

9.      This Notice of Removal is timely because it is filed within thirty (30) days of the date Plaintiffs served their Complaint on at least one of the Removing Defendants. *See* 28 U.S.C. § 1446(b)(2); *Delalla*, 660 F.3d at 189.

---

[1] Counsel for Defendant Rosen Swiss A.G. ("Rosen") has advised that it consents to this removal and in doing so does not waive, and expressly reserves, its right to object to service of process, the sufficiency of process, personal jurisdiction, and venue, and to assert any defenses and objections to which it is entitled.

**FACTUAL AND PROCEDURAL BACKGROUND**

10.     This Action involves a release of petroleum product and other purported substances in Upper Makefield Township, Pennsylvania (the "Release" or "Leak") from a pipeline that transports jet fuel and other petroleum product from the Twin Oaks Terminal in Aston, Pennsylvania to the Newark Terminal in Newark, New Jersey (the "Twin Oaks Pipeline" or "Pipeline").  Exhibit C, Compl. ¶¶ 1, 80.

11.     The Release was announced on January 31, 2025.  *Id.* ¶ 172.

12.     The Pipeline is owned and operated by SPLP.  *Id.* ¶ 44.  SPLP and its parent entity Energy Transfer have publicly taken full responsibility for the Release and its remediation.  *Id.*

13.     Nonetheless, Plaintiffs have named as Defendants 17 additional entities:

    A.      An entity affiliated with Energy Transfer, R&M, whom Plaintiffs vaguely claim is "administratively responsible" for the Release (*id.* ¶ 45);

    B.      Entities whose petroleum product allegedly leaked from the Pipeline and their parent corporations, that is, the Delta Defendants, the PBF Defendants, and ETMT (together, the "Shipper Defendants") (*id.* ¶¶ 4, 46); and

    C.      Entities that Plaintiffs allege performed services associated with the Pipeline and their parent corporations, that is, Precision, MasTec, NEFS, Shaw, CorrPro, Azuria, Barr, Baker Hughes, and Rosen (together, the "Contractor Defendants") (*id.* ¶¶ 1, 5).

14.     Plaintiffs allege that the Energy Transfer Defendants and the Contractor Defendants failed to "maintain[] the Pipeline and ensur[e] its safety."  *Id.* ¶ 20.

15.     Plaintiffs further allege that the Energy Transfer Defendants' remediation efforts have caused nuisances in the neighborhood.  *Id.* ¶ 15.

4

16. Plaintiffs allege that the Shipper Defendants' petroleum products "contributed to the corrosion of the Pipeline and leaked into Plaintiffs' neighborhood and aquifer." *Id.* ¶ 4.

17. Plaintiffs allege that the Contractor Defendants "undertook monitoring and/or maintenance obligations regarding the Pipeline and their failure to properly carry out these obligations was a substantial contributing factor in causing the Leak." *Id.* ¶ 5.

18. Plaintiffs contend that as a result of this Leak, there has been a "massive and still unquantified leak of jet fuel and other petroleum" that has contaminated the private drinking water wells, groundwater, soil, and air of the surrounding community. *Id.* ¶¶ 1, 7, 9, 29.

19. Plaintiffs attempt to plead claims for: (i) negligence; (ii) gross negligence; (iii) negligence per se; (iv) strict liability – abnormally dangerous or ultrahazardous activity; (v) public nuisance; (vi) private nuisance; (vii) trespass; (viii) negligent infliction of emotional distress; and (ix) medical monitoring. *See generally id*. ¶¶ 421-86.

20. Plaintiffs seek to pursue these claims on behalf of themselves and a purported class consisting of:

> All Pennsylvania citizens who owned, rented, and/or resided in real properties in Pennsylvania within the following boundaries in Upper Makefield Township and Lower Makefield Township: West of Delaware River; East of Dolington Acres Road or Dolington Road; South of Aqueduct Road or Wilkes Street; and North of Dyers Creek or Kimbles Road, during the time period from September 1, 2023 to the present[.]

*Id.* ¶¶ 407-08.

21. Plaintiffs also seek to pursue claims on behalf of themselves and a purported "Contamination Subclass" comprised of "[a]ll members of the Class whose property has tested positive for the presence of [light non-aqueous phase liquid ("LNAPL")] or for any volatile organic

compounds, lead, or other constituents of any petroleum product (including J-value results) since January 1, 2025." *Id.* ¶ 409.

22.     The La Hart and Zacharatos Plaintiffs also seek to pursue claims on behalf of themselves and a purported "Public Water Subclass" comprised of "All members of the Class whose property was deemed by the Upper Makefield Township Mt. Eyre Water Alternatives Study as a 'ratepayer' that would bear a portion of the cost of an alternative water source to be installed in Mt. Eyre Manor." *Id.* ¶ 410.

23.     Plaintiffs seek damages consisting of compensatory damages, medical monitoring, punitive damages, pre- and post-judgement interest, as well as declaratory relief, equitable relief, injunctive relief and all other relief the Court deems necessary and proper. *See id.* ¶ 487.

24.     On April 24, 2025, Defendants SPLP, Energy Transfer, and R&M timely removed the Action to the U.S. District Court for the Eastern District of Pennsylvania, Case No. 25-cv-2072 (the "First Removal") on diversity grounds under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

25.     Pursuant to 28 U.S.C. § 1446(a), a copy of the Docket Sheet and copies of all process, pleadings, and orders served to date upon Defendants in the First Removal are attached as Exhibit B.

26.     On May 27, 2025, Plaintiffs Daniel La Hart and Katherine La Hart moved to remand the Action. *See* Remand Order, Exhibit B at 573.

27.     On June 4, 2025, Plaintiffs amended their Complaint.  Exhibit B at 317.

28.     On June 13, 2025, the Court granted the motion of Plaintiffs Daniel La Hart and Katherine La Hart and remanded the Action to the Court of Common Pleas of Philadelphia County ("Remand Order").  Exhibit B at 573.

6

29.     The Court issued a Memorandum Opinion on June 16, 2025, explaining that CAFA undisputedly applied, but that remand was proper owing to the local controversy exception to CAFA, based on the purported involvement of local defendant R&M.  Exhibit B at 574.

30.     Defendants in the First Removal timely appealed the Remand Order, which appeal is pending before the U.S. Court of Appeals for the Third Circuit, Case No. 25-2152.  Exhibit B at 8.

31.     The Action thereafter proceeded before the Court of Common Pleas of Philadelphia County.  *See* Exhibit A.  On January 15, 2026, Plaintiffs filed the SAC, adding fifteen new defendants, including the Removing Defendants.  *See* Exhibit C.

## REMOVAL STANDARD AND GROUNDS FOR REMOVAL UNDER CAFA

32.     Notwithstanding the prior remand and pending appeal, each of the newly added defendants has an independent right to remove this Action within thirty days of service of the SAC. *See Delalla*, 660 F.3d at 186; *Farina v. Nokia Inc.*, 625 F.3d 97, 111 (3d Cir. 2010) ("[A] party brought into court by an amendment, and who has, for the first time, an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court." (citation omitted)); *Niblack v. Pettway*, No. CIV.A. 14-3883 MAS, 2014 WL 4953247 at *5 (D.N.J. Oct. 1, 2014).

33.     This action is removable, and this Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453, which requires only minimal diversity.[2]

34.     As provided in 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

35.     The Underlying State Court Action is removable to the United States District Court for the Eastern District of Pennsylvania because this Court (i) has original jurisdiction over this putative class action under CAFA, 28 U.S.C. §§ 1332(d)(2) and 1453, and (ii) encompasses the district where the Underlying State Court Action is pending.

36.     Plaintiffs seek to bring the Underlying State Court Action as a putative class action, asserting that they have met numerosity, typicality, adequacy, commonality, predominance, and superiority requirements with respect to the putative class. *See* Exhibit. C, Compl. ¶¶ 407-19. Plaintiffs seek to certify the proposed class under Pennsylvania Rules of Civil Procedure 1701, *et seq.*, the state's analog to Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 408.

37.     CAFA permits the removal of a class action where: (1) the proposed class includes at least 100 members; (2) any class member is a citizen of a state different from any defendant; and (3) the amount in controversy exceeds $5,000,000 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

---

[2] With respect to the local controversy exception, discussed *infra*, the Third Circuit has held that a Court must assess "[w]hether the local defendant's alleged conduct is significant" by "comparing it to the alleged conduct of **all Defendants**." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009) (emphasis added).

38.     This case satisfies each of these requirements and removal based on CAFA is proper here because: (i) the aggregate number of putative class members is 100 or greater, (ii) minimal diversity of citizenship between Plaintiffs and Defendants exists, and (iii) the amount the Complaint places in controversy exceeds, in the aggregate, $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.

39.     Defendants deny Plaintiffs' factual allegations and deny that Plaintiffs, or the class and subclasses they purport to represent, are entitled to the relief requested and that the proposed class and subclasses are certifiable. However, based on Plaintiffs' allegations in the Complaint and their prayers for relief, all requirements for jurisdiction under CAFA have been met. Accordingly, diversity of citizenship exists under CAFA and this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

**A. The Putative Class Has More Than 100 Members.**

40.     Plaintiffs assert claims on behalf of a putative class comprised of: "All Pennsylvania citizens who owned, rented, and/or resided in real properties in Pennsylvania within the following boundaries in Upper Makefield Township and Lower Makefield Township: West of Delaware River; East of Dolington Acres Road or Dolington Road; South of Aqueduct Road or Wilkes Street; and North of Dyers Creek or Kimbles Road, during the time period from September 1, 2023 to the present." *See* Exhibit C, Compl. ¶ 408.

41.     Plaintiffs also seek to represent two subclasses, that is, a "Contamination Subclass" comprised of residents within the class area that tested positive for petroleum products in their wells and a "Public Water Subclass" of potential ratepayers in the event that Upper Makefield Township connects to an alternative water source. *Id.* ¶¶ 409-10.

9

42.     Plaintiffs estimate that there are at least one thousand members in the proposed Class and several hundred members in each proposed subclass. *Id.* ¶ 413.

43.     Thus, upon information and belief and based on Plaintiffs' own averments, the putative class Plaintiffs purport to represent has more than 100 members.

**B. Minimal Diversity of Citizenship Under CAFA Exists.**

44.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—i.e., that one putative class member is a citizen of a state different from that of one defendant. *See* 28 U.S.C. § 1332(d)(2); *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 445 (E.D. Pa. 2010) ("For CAFA's minimal diversity requirements to be met, 'only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant.'" (citation omitted)).

### i.  *Named Plaintiffs Are Citizens of Pennsylvania.*

45.     An individual is a citizen of the state in which he or she is domiciled. *See Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014).

46.     Although residence alone is not the equivalent of citizenship, the place of residence is prima facie evidence of domicile there. *See Broderick v. Dellasandro*, 859 F. Supp. 176, 177 n.1 (E.D. Pa. 1994) ("[R]esidence is prima facie evidence of citizenship.").

47.     Plaintiffs Daniel La Hart and Katherine La Hart allege that they "moved to the Mt. Eyre Manor neighborhood in 2016 and live in their home with their two young children" and that they "reside at 114 Spencer Road, Washington Crossing, Pennsylvania, 18977." *See* Exhibit C, Compl. ¶¶ 36, 365.  As such, they are Pennsylvania residents.

48.     Plaintiffs Jerry Zacharatos and Justine Zacharatos allege that they "have lived in the Mt. Eyre Manor neighborhood since 2019" and that they "reside at 126 Walker Road,

Washington Crossing, Pennsylvania 18977." *See id.* ¶¶ 37, 372. As such, they are Pennsylvania residents.

49.     Plaintiffs Christopher Grover and Andrew Grover allege that they "reside at 1004 Swayze Avenue, Washington Crossing, Pennsylvania 18977" and that they "have lived in their home on Swayze Avenue since 2001." *See id.* ¶¶ 38, 378. As such, they are Pennsylvania residents.

50.     Thus, Plaintiffs are citizens of Pennsylvania, both now and at the time of the commencement of this action.

### ii.  16 of 18 Defendants are Not Citizens of Pennsylvania.

51.     The citizenship of both unincorporated entities and corporations is determined based on the entity's state of organization and principal place of business. *See* 28 U.S.C. § 1332(d)(10) ("[A]n unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); *see also Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504 n.3 (3d Cir. 2013) ("As an unincorporated association, CAFA deems [entity] 'to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized[.]'") (citation omitted).

52.     The "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

53.     The vast majority of Defendants are not citizens of Pennsylvania. *See* 28 U.S.C. § 1332(c)(1).

54.     Delta Air Lines, Inc. is a publicly traded corporation formed under the laws of the State of Delaware whose principal place of business is located in Georgia. Exhibit C, Compl. ¶ 47.

11

Accordingly, Delta was at the time of the commencement of this Action, and is now, a citizen of Delaware and Georgia.

55.    Epsilon Trading, LLC is a limited liability company formed under the laws of the State of Delaware whose principal place of business is located in Georgia. *Id.* ¶ 48. Accordingly, Epsilon was at the time of the commencement of this Action, and is now, a citizen of Delaware and Georgia.

56.    Sunoco Pipeline LP is a limited partnership organized under the laws of the State of Texas whose principal place of business is also located in Texas. Exhibit C, Compl. ¶ 39. Accordingly, SPLP was at the time of the commencement of this Action, and is now, a citizen of Texas.

57.    Energy Transfer LP is a master limited partnership organized under the laws of the State of Delaware whose principal place of business is located in Texas. *See id.* ¶ 40. Accordingly, Energy Transfer was at the time of the commencement of this Action, and is now, a citizen of Delaware and Texas.

58.    Energy Transfer Marketing & Terminals L.P. is a limited partnership formed under the laws of the State of Texas whose principal place of business is also in Texas. *See id.* ¶ 42; Exhibit D. Accordingly, ETMT was at the time of the commencement of this Action, and is now, a citizen of Texas.

59.    PBF Energy Inc. is a publicly traded corporation formed under the laws of the State of Delaware whose principal place of business is in New Jersey. *Id.* ¶ 51. Accordingly, PBF Energy was at the time of the commencement of this Action, and is now, a citizen of Delaware and New Jersey.

60.    PBF Holding Company LLC is a limited liability company formed under the laws of the State of Delaware whose principal place of business is in New Jersey. *Id.* ¶ 52. Accordingly, PBF Holding was at the time of the commencement of this Action, and is now, a citizen of Delaware and New Jersey.

61.    Precision Pipeline LLC is a limited liability company formed under the laws of the State of Wisconsin whose principal place of business is also located in Wisconsin. *Id.* ¶ 54. Accordingly, Precision was at the time of the commencement of this Action, and is now, a citizen of Wisconsin.

62.    MasTec, Inc. is a publicly traded corporation formed under the laws of the State of Florida whose principal place of business is also in Florida. *Id.* ¶ 55. Accordingly, MasTec was at the time of the commencement of this Action, and is now, a citizen of Florida.

63.    Natural Energy Field Services, LLC is a limited liability company formed under the laws of the State of Kentucky whose principal place of business is also in Kentucky. *Id.* ¶ 56. Accordingly, NEFS was at the time of the commencement of this Action, and is now, a citizen of Kentucky.

64.    Shaw Pipeline Services Inc. is a privately held corporation formed under the laws of the State of Texas whose principal place of business is in the State of Oklahoma. *Id.* ¶ 57. Accordingly, Shaw was at the time of the commencement of this Action, and is now, a citizen of Texas and Oklahoma.

65.    CorrPro Companies, Inc. is a privately held corporation formed under the laws of the State of Ohio whose principal place of business is also in Ohio. *See id.* ¶ 58; Exhibit E. Accordingly, CorrPro was at the time of the commencement of this Action, and is now, a citizen of Ohio.

66. Azuria Water Solutions, Inc. is a privately held corporation formed under the laws of the State of Delaware whose principal place of business is in the State of Missouri. *See* Exhibit C, Compl. ¶ 59. Accordingly, Azuria was at the time of the commencement of this Action, and is now, a citizen of Missouri.

67. Barr Air Patrol, LLC is a limited liability company formed under the laws of the State of Delaware whose principal place of business is in the State of Texas. *See id.* ¶ 60. Accordingly, Barr was at the time of the commencement of this Action, and is now, a citizen of Delaware and Texas.

68. Baker Hughes Company is a publicly traded corporation formed under the laws of the State of Delaware whose principal place of business is in the State of Texas. *See id.* ¶ 61; Exhibit F. Accordingly, Baker Hughes was at the time of the commencement of this Action, and is now, a citizen of Delaware and Texas.

69. Rosen Swiss A.G. is a Swiss entity formed under the laws of Switzerland. *See id.* ¶ 62. Accordingly, Rosen was at the time of the commencement of this Action, and is now, a citizen of Switzerland.

70. Only two out of eighteen defendants may be considered citizens of Pennsylvania:

A. Energy Transfer (R&M), LLC is a limited liability company formed under the laws of the Commonwealth of Pennsylvania whose principal place of business is in the State of Texas. *See id.* ¶ 41; Exhibit G. Accordingly, R&M was at the time of the commencement of this Action, and is now, a citizen of Pennsylvania and Texas.

B. Monroe Energy, LLC is a limited liability company formed under the laws of the State of Delaware whose principal place of business is in the

14

Commonwealth of Pennsylvania. *See id.* ¶ 49. Accordingly, Monroe was at the time of the commencement of this Action, and is now, a citizen of Delaware and Pennsylvania.

71. Because 16 of 18 Defendants are not residents of Pennsylvania, minimal diversity is more than satisfied, and diversity jurisdiction exists under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only minimal diversity under which "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *see also Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2009 WL 2394362, at *2 (E.D. Pa. Aug. 4, 2009) (holding that minimal CAFA diversity was met where one defendant was a Texas corporation with its principal place of business in Pennsylvania, two defendants were Texas corporations with their principal places of business in Texas, named plaintiffs were Pennsylvania residents and the group of potential class members consisted of about 185 individuals with addresses in Pennsylvania and 61 with addresses outside of Pennsylvania).

### C. The Amount in Controversy Exceeds $5 Million.

72. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6).

73. To determine whether the amount in controversy requirement is satisfied, district courts aggregate the claims of all named or unnamed persons who "fall within the definition of the proposed or certified class." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(1)(D)). "A district court's determination as to the amount in controversy must be based on the 'plaintiff's complaint at the time the petition for removal was filed.'" *Werwinski*

15

*v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (citation omitted), *abrogated on other grounds by Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021).

74.    "Where, as here, the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only plausibly allege the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 783 n.2 (3d Cir. 2020) (internal quotation marks and alteration omitted); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). Additionally, for purposes of removal, "[t]he question is not what damages plaintiff will recover, but what amount is 'in controversy' between the parties." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ("That the plaintiff may fail in its proof, and the judgment be less than the threshold . . . does not prevent removal.").

75.    Although Defendants deny Plaintiffs' factual allegations and deny that Plaintiffs or the class they purport to represent are entitled to the relief Plaintiffs request, Plaintiffs' allegations and prayer for relief more likely than not put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members under 28 U.S.C. § 1332(d)(6).[3]

---

[3] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' Complaint. Defendants' references to specific damage amounts and citation to cases supporting removal are provided solely for establishing that the amount in controversy more likely than not exceeds the jurisdictional minimum. Defendants maintain that each of Plaintiffs' claims is without merit, and Defendants are not liable to Plaintiffs or any putative class member. Defendants expressly deny that Plaintiffs or any putative class member is entitled to recover any of the damages or other relief sought in the Complaint. In addition, Defendants deny that liability or damages can be established on a class-wide basis. No statement or reference contained in this Notice shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

76.     Moreover, Plaintiffs submitted a Case Management Memorandum in the Underlying State Action on September 12, 2025, stating that they seek $300 million in compensatory damages in addition to punitive damages to be determined by a jury. *See* Exhibit H.

77.     Thus, this matter well exceeds the threshold $5 million required for removal under CAFA.

**D. No Exceptions to CAFA Jurisdiction Apply.**

78.     Under CAFA, there are two primary exceptions to the exercise of federal jurisdiction: **(1)** the **"local controversy" exception**, and **(2)** the **"home-state controversy" exception**. *See* 28 U.S.C. §§ 1332(d)(3)(A)-(B).

79.     *Plaintiffs* bear the burden of proof as to the applicability of both these exceptions. *Jani-King*, 2009 WL 2394362, at *2.  Plaintiffs cannot meet that burden here.[4]

---

[4] Removing Defendants recognize that following the original removal of this case under CAFA by Defendants Energy Transfer, SPLP, and R&M, the Court remanded the case under the local controversy exception, finding that the conduct of R&M, the only local defendant named in Plaintiffs' prior complaint, formed "a significant basis for the claims asserted by the proposed plaintiff class."  28 U.S.C. § 1332(d)(4)(A)(II)(bb); *see also* Exhibit B at 582.  Removing Defendants anticipate Plaintiffs may argue the Court's prior finding regarding R&M again requires remand.  The Court's prior analysis does not require (or support) remand now for at least two reasons.  First, the Court did not have before it in June 2025, when it remanded the case, PADEP's July 2025 letter in which PADEP acknowledged its mistake in naming R&M as the parent of SPLP and plainly stated (i) that PADEP "has looked to SPLP, and its ultimate parent corporation Energy Transfer LP [not R&M], to perform the response, investigation, and remediation necessary to address" the Release and (ii) that PADEP "has not sought response, investigation, or remediation actions from [R&M]."  *See* Exhibit K.  These PADEP statements contradict the Court's prior reading of PADEP's Administrative Order that "[t]he PADEP's directive to R&M to take active steps to correct the leak, not merely informational or reporting duties, suggests that PADEP viewed it as operationally or corporately responsible and not some nominal party."  Exhibit B at 582.  Second, and perhaps most importantly, Plaintiffs have added *fifteen* new defendants.  Under applicable Third Circuit precedent, the Court is required to assess whether any conduct of R&M, compared to the conduct of all the non-local Defendants (of which there are now at least sixteen), forms a significant basis for Plaintiffs' claims.  As discussed below, Plaintiffs fail to identify *any* conduct of R&M that forms the basis of the claims plead in the SAC, much less any conduct that,

80.     **First**, under the mandatory local controversy exception, CAFA requires federal courts to decline to exercise jurisdiction where (i) more than two-thirds of the members of all proposed plaintiff classes in the aggregate are residents of the state in which the action was originally filed and (ii) at least one defendant "is a defendant—(aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed[.]"  28 U.S.C. § 1332(d)(4)(A).

81.     As explained above, Plaintiffs and the putative class are all Pennsylvania citizens. *See supra* ¶¶ 20-22, 45-50.

82.     As explained above, only two of the eighteen Defendants, R&M and Monroe, may be considered Pennsylvania citizens.  *See supra* ¶¶ 70.

83.     Plaintiffs have not alleged that either R&M or Monroe engaged in any conduct that forms a basis, let alone the requisite *significant* basis, for the claims asserted in the Complaint.  *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009) ("[T]he significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants. . . .  If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied.").

84.     With respect to R&M, Plaintiffs merely assert that R&M "has been deemed administratively responsible for the Pipeline Leak."  *See* Exhibit C, Compl. ¶ 45.  Plaintiffs' assertion is demonstrably false and contradicted by Plaintiffs own allegations.  In a March 6, 2025 Administrative Order, PADEP identified Energy Transfer (R&M), LLC as the owner and operator

---

when viewed in comparison to the alleged conduct of more than a dozen non-local defendants, forms a significant basis for Plaintiffs' claims.

of the Pipeline and parent entity of Sunoco Pipeline LP. *See* March 6, 2025 Order in the Matter of Sunoco Pipeline, LP and Energy Transfer (R&M) LLC, attached hereto as Exhibit I. It isn't. As Energy Transfer and SPLP explained in their March 31, 2025 Response to PADEP, R&M has no ownership or operational interest in the Pipeline and is not the parent entity of SPLP. *See* March 31, 2025 Letter from Matthew Gordon to PADEP, attached hereto as Exhibit J. PADEP acknowledged in its July 14, 2025 response that (1) SPLP's ultimate parent is Energy Transfer, not R&M; (2) PADEP "has looked to SPLP, and its ultimate parent corporation Energy Transfer LP [not R&M], to perform the response, investigation, and remediation necessary to address" the Release; and (3) PADEP "has not sought response, investigation, or remediation actions from [R&M]." *See* July 14, 2025 Letter from PADEP to Matt Gordon, attached hereto as Exhibit K. Indeed, Plaintiffs acknowledge that the Order only named R&M because of "PADEP's prior dealings" with R&M that predate the Release. *See* Exhibit C, Compl. ¶¶ 244-45. These allegations are insufficient to establish that R&M engaged in any conduct that constitutes a substantial basis for Plaintiffs' claims. *See Kelly v. Verizon Pa., LLC*, No. 16-5672, 2019 WL 558100, at \*11-12 (E.D. Pa. Feb. 12, 2019) (denying plaintiff's motion for remand because the Pennsylvania defendant did not "engage[] in any conduct that constitutes a significant basis of the claims set forth in the Complaint" compared to the non-Pennsylvania defendant).

85.    With respect to Monroe, Plaintiffs allege that Monroe was one of at least *six* entities that shipped petroleum products through the Pipeline at some point before the Release was detected in January 2025, and that the products of one or more of those six defendants contaminated Plaintiffs' neighborhood. *See* Exhibit. C, Compl. ¶¶ 21, 49-53. Plaintiffs do not explain how Monroe's *conduct* formed a significant basis for Plaintiffs' claims as compared to the five other entities that also allegedly shipped products through the Pipeline. Setting aside

19

Plaintiffs' impermissible group pleading, there are no other allegations specific to Monroe's conduct in the Complaint.

86.     Because Plaintiffs have failed to plead that any alleged conduct of R&M or Monroe is a significant basis of their claims, the local controversy exception does not apply.

87.     **Second**, under the home-state controversy exception, CAFA requires federal courts to decline to exercise jurisdiction where two-thirds or more of the members of all proposed plaintiff classes in the aggregate and *all* of the primary defendants are citizens of the state where the class action was originally filed. 28 U.S.C. § 1332(d)(4)(B). The primary defendants here are SPLP and Energy Transfer, neither of which are citizens of Pennsylvania for CAFA purposes. *See Vodenichar*, 733 F.3d at 505-06 (explaining that primary defendants are "the 'real target' of the plaintiffs' accusations" and would sustain substantial losses if found liable as compared to other defendants); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 518 (E.D. Pa. 2007) (denying plaintiff's motion to remand because the primary defendants are not citizens of Pennsylvania).

88.     Thus, Plaintiffs cannot meet their burden of proving that either CAFA exception applies.

## THIS COURT IS THE PROPER VENUE

89.     Venue is proper in this District under 28 U.S.C. § 1441(a) because the court in which the Underlying State Court Action was filed, the Court of Common Pleas of Philadelphia County, Pennsylvania, is located within this judicial district, so this district embraces the place where the action was filed and is pending. *See* 28 U.S.C. § 118(a). Had Plaintiffs filed the Complaint in the Court of Common Pleas of Bucks County, where the events alleged in the Complaint occurred, venue would likewise be proper because the Court of Common Pleas of Bucks County is also located within this judicial district.

20

90.     Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a written notice of this removal with the Clerk of the Philadelphia Court of Common Pleas which, along with this notice, is being served upon Plaintiff's counsel as required by 28 U.S.C. § 1446(d).

91.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibits A (Underlying State Court Action) and B (First Remand).

WHEREFORE, Removing Defendants respectfully give notice that this action has been removed from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.

Date: February 20, 2026

Respectfully submitted,

/s/ Christopher M. Brolley

| | |
|---|---|
| Matthew R. Conley (PA I.D. No. 204461) | A. Christopher Young (PA I.D. No. 55742) |
| Jeffrey M. Scott (PA I.D. No. 60184) | Christopher M. Brolley (PA I.D. No. 322851) |
| **ARCHER & GREINER P.C.** | **TROUTMAN PEPPER LOCKE LLP** |
| Three Logan Square | 3000 Two Logan Square |
| 1717 Arch Street, Suite 3500 | Eighteenth and Arch Streets |
| Philadelphia, PA 19103 | Philadelphia, PA 19103 |
| Tel: (215) 963-3300 | Tel: (215) 981-4000 |
| Fax: (215) 963-9999 | christopher.young@troutman.com |
| mconley@archerlaw.com | christopher.brolley@troutman.com |
| jscott@archerlaw.com | |

*Counsel for Defendants PBF Energy Inc. and PBF Holding Company LLC*

*Counsel for Defendants Delta Air Lines, Inc., Epsilon Trading, LLC, and Monroe Energy, LLC*

| | |
|---|---|
| Laura Hughes McNally (PA I.D. No. 310658) | Christopher M. Lucca (PA I.D. No. 316225) |
| **MORGAN, LEWIS & BOCKIUS LLP** | Vanessa L. Huber (PA I.D. No. 329105) |
| 2222 Market Street | **CLARK HILL PLC** |
| Philadelphia, Pennsylvania 19103 | Two Commerce Square |
| Tel: (215) 963-5000 | 2001 Market Street, Suite 2620 |
| Fax: (215) 963-5001 | Philadelphia, PA 19103 |
| laura.mcnally@morganlewis.com | Tel: (215) 640-8500 |
| | Fax: (215) 640-8501 |

21

Duke K. McCall III, *pro hac vice application forthcoming*
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 373-6607
duke.mccall@morganlewis.com

Robert D. Fox (PA I.D. No. 44322)
Diana A. Silva (PA I.D. No. 311083)
**MANKO, GOLD, KATCHER & FOX, LLP**
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
Tel: (484) 430-5700
Fax: (484) 430-5711
rfox@mankogold.com
dsilva@mankogold.com

*Counsel for Defendant Energy Transfer Marketing & Terminals L.P.*

Nicole Diesa, Esquire (PA I.D. No. 331320)
**FORMAN WATKINS & KRUTZ, LLP**
328 Newman Springs Road
Red Bank, NJ 07701
Tel: (732) 852-4400
Fax: (732) 852-4401
nicole.diesa@formanwatkins.com

*Counsel for Baker Hughes Company*

clucca@clarkhill.com
vhuber@clarkhill.com

*Counsel for Barr Air Patrol, LLC and Shaw Pipeline Services Inc*

Morgan S. Birch (PA I.D. No. 319358)
Alexandra M. George (PA I.D. No. 336438)
**WHITE AND WILLIAMS, LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7100
birchm@whiteandwilliams.com
georgeal@whiteandwilliams.com

*Counsel for Natural Energy Field Services, LLC*

Wesley R. Payne (PA I.D. No. 53371)
Laura E. Hutchinson (PA I.D. No. 324202)
**WHITE AND WILLIAMS, LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7000
paynew@whiteandwilliams.com
hutchinsonl@whiteandwilliams.com

*Counsel for MasTec, Inc. and Precision Pipeline LLC*

## CERTIFICATE OF SERVICE

I, Christopher Brolley, certify that I caused the foregoing to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on February 20, 2026.

*/s/ Christopher M. Brolley*
Christopher M. Brolley