# Exhibit H

FILED
12 SEP 2025 06:58 pm
Civil Administration
R. POSTELL

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| DANIEL LA HART and KATHERINE LA HART, individually and on behalf of those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SUNOCO PIPELINE L.P.; ENERGY TRANSFER LP; and ENERGY TRANSFER (R&M) LLC,<br><br>                    Defendants. | PHILADELPHIA COUNTY COURT OF COMMON PLEAS TRIAL DIVISION<br><br><br>MARCH TERM, 2025<br><br>CASE NO.  250303655 |

CASE MANAGEMENT CONFERENCE MEMORANDUM
COMMERCE CASE MANAGEMENT


Filing party: **Daniel La Hart and Katherine La Hart** by: **Shanon J. Carson**, Esquire

Counsel's address and telephone number: **1818 Market Street, Suite 3600, Philadelphia, PA 19103, (215) 875-3000**

_____

1.      Date of contract or transaction dates: **N/A**

2.      Date of birth of your individual client: **Daniel: 08/11/1984, Katherine: 01/20/1986**

                         ___N/A  ___Unknown  ____ Decline to provide *NOTE:*

*Date of birth information is intended for the Court's use only. The information will not be made available to the public.*

3.      Is there a writing?                                                    ___ yes  _X_ no

        If yes, is there an allegation that the writing does not contain
         the entire agreement of the parties?                    ___ yes  ____ no


4.      Is the Uniform Commercial Code applicable to this case?        ___ yes  _X_ no

5.      Describe the nature of the conduct alleged as giving rise to the cause of action or, if defense, the nature of the defense:

**Defendants own and operate a hazardous liquid pipeline transporting petroleum products, including jet fuel, directly underneath Plaintiffs' neighborhood. Starting in September 2023, Plaintiffs' neighbors began detecting the taste and odor of petroleum in their respective well water, and individuals reported their odor complaints. Defendants lacked or have failed to implement appropriate leak detection capacities and procedures and, accordingly, failed to timely detect and respond to a leak in their pipeline. Defendants received multiple odor complaints over a period of 16 months. On January 31, 2025, Defendants finally excavated a portion of the pipeline at 121 Glenwood Drive, and discovered a rupture in the pipeline that was releasing jet fuel. On that date, Defendants informed the National Response Center of a release of petroleum products from the pipeline at 121 Glenwood Drive. The dangerous and toxic constituents of petroluem that have been detected since the leak include kerosene, benzene, ethylbenzene, isopropylbenzene, dichlorethane, trimethylbenzene, toluene, naphthalene, methyl tertiary-butyl ether ("MTBE"), and lead.**

**The Mt. Eyre Manor neighborhood, where Plaintiffs live, has long been considered an idyllic and desirable neighborhood where families find their forever homes. One of the notable features of the neighborhood is that it has no public water hook-up—each property has a private residential well that draws water from the underlying aquifer, and the residents rely on water from the aquifer for drinking, washing, cooking, bathing, and all other water needs. Defendants' leak released jet fuel and other products, and the toxic chemicals that are contained in them, into the aquifer, damaging it and the neighborhood's environment and threatening the health and safety of all the residents who live there. More than 40 households in the neighborhood have detected toxic chemicals since the leak in their private water, soil, or indoor air, and additional properties are continuing to detect contamination for the first time on a regular basis as the contamination plume continues to spread.**

**Plaintiffs own a home at 114 Spencer Road, just over 500 feet from where their neighbors first detected the taste and odor of gasoline in September 2023 and from where the leaking portion of the Pipeline was ultimately excavated 16 months later. Plaintiffs' private well water has tested positive for contaminants since the leak, specifically MTBE and lead. They moved to the home in 2016 with their two young children, and prior to the Pipeline leak believed this to be their forever home. Now, they have been forced to consider moving, and their idyllic home has become an albatross that Plaintiffs will struggle to sell for close to its fair market value.**

**Plaintiffs' experience is common to that of other members of the proposed Class. Defendants still have yet to properly determine the size, make-up, or migration rate of the contamination plume, and even with Defendants' limited testing protocol new households continue to detect contamination for the first time. Members of the Class, whether their individual properties have detected contamination yet or not, have all experienced injuries in terms of decreases in property values, risk of exposure to toxic chemicals, and the nuisances created by not only the leak itself, but by the remediation efforts required of Defendants to mitigate the damage they have caused.**

6.    State the amount of the damages claimed by Plaintiff and explain how damages are calculated **(note: because this is a tort case, rather than contract, Plaintiffs have removed the "direct" versus "consequential" distinction and instead termed their and the Class's alleged damages "compensatory")**:

(a)    Compensatory: **$300,000,000 – includes lost property values; loss of use and enjoyment of property; nuisance; costs to mitigate or avoid potential toxic exposures; costs of remediation, including but not limited to connection to**

**alternative water source; medical expenses including but not limited to monitoring for signs of exposure and to address fear and anxiety caused by the leak; overpayment of property taxes. To be proven at trial, including by expert testimony.**

(b)    Other (specify): **punitive damages to be determined by a jury.**

7.      Is there a counterclaim?                                              _____ yes   X  no

If yes, state the basis of the claim (e.g., contract, tortious interference, etc.).

This form shall be presented to the Case Manager and copies served upon all parties at the Case Management Conference by counsel prepared to discuss its contents.

8.      State the amount of damages sought in the counterclaim: N/A
        a.  Direct          _____
        b.  Consequential  _____
        c.  Other (specify) _____

9.      List five (or more) acceptable Commerce Program Judges Pro Tem for mandatory settlement conference purposes:

        **Paul Rosen, Ellen Friedell, Cletus Lyman, Ying Zhou, David Searles**

9(a).   Discuss whether and when early Mediation would be worthwhile:

        Plaintiffs are amenable to engaging in mediation concurrent to the litigation. Defendants to date have rejected all efforts to discuss or negotiate settlement.

10.     Are there related case(s)?      X yes   _____ no.
        If yes, identify:

        *Vanni et al. v. Sunoco Pipeline L.P. et al.*, No. 250400887 (Phila. C.C.P.); *Geltch et al. v. Sunoco Pipeline L.P. et al.*, No. 250402049 (Phila. C.C.P.); *Wojnovich, et al. v. Sunoco Pipeline L.P. et al.*, No. 250402048 (Phila. C.C.P.); *Miller et al. v. Sunoco Pipeline L.P. et al.*, No. 250502415 (Phila. C.C.P.); *Mela et al. v. Sunoco Pipeline L.P. et al.*, No. 250502461 (Phila. C.C.P.); *Kuzniacki et al. v. Sunoco Pipeline L.P. et al.*, No. 250600768 (Phila. C.C.P.); *Tsolakis et al. v. Sunoco Pipeline L.P. et al.*, 250700919 (Phila. C.C.P.); *Sunoco Pipeline LP v. La Hart et al.*, No. 25-cv-3694-MRP (E.D. Pa.)

11.     Identify applicable insurance coverage and note if there are insurance coverage issues:

        **Defendants have not identified any applicable insurance coverage**

12.     Identify anticipated areas of expert testimony:

        **Hydrogeology, property valuation, pipeline safety, pipeline engineering and infrastructure, toxicology, epidemiology**

13.     Requested Track:  Expedited (13 months) Standard (18 months) Complex (24 months).

14.    Additional Comments (if any):

**Plaintiffs address the following additional topics as requested in the Court's August 4, 2025, Class Action Initiation Order:**

**Order of discovery:** There is no need to phase discovery in this case, and certification and merits discovery should proceed concurrently. Especially given the existence of at least seven other individual (non-class) cases arising out of the same transaction or occurrence, there is no reason to delay merits discovery.

**Anticipated procedural complications concerning jurisdiction and venue:** This Court has jurisdiction, and this case is properly venued in Philadelphia County for the reasons discussed in Plaintiffs' Opposition to Defendants' Motion to Transfer. That said, Defendants' Preliminary Objections (which raise issues of venue) and Motion to Transfer for *Forum Non Conveniens* are currently pending before this Court. Additionally, the U.S. District Court for the Eastern District of Pennsylvania previously remanded this matter based on a mandatory exception to the Class Action Fairness Act, *see La Hart v. Sunoco Pipeline L.P.*, No. 25-cv-2072, 2025 WL 1689392 (E.D. Pa. June 16, 2025), and that ruling is currently on appeal at the U.S. Court of Appeals for the Third Circuit.

**Anticipated procedural complications concerning additional parties:** Plaintiffs anticipate joining additional parties as Defendants following John Doe discovery.

**Anticipated procedural complications concerning requests for bifurcation:** This case should not be bifurcated, and plaintiffs would oppose any such request.

**Any other anticipated or known procedural complications:** Defendants filed a complaint and motion in federal court seeking a temporary restraining order to prevent this Court from considering any claims for injunctive relief in this case. That motion was swiftly denied, *see Sunoco Pipeline LP v. La Hart et al.*, No. 25-cv-3694-MRP, ECF No. 17, and the denial is currently on appeal at the U.S. Court of Appeals for the Third Circuit.

15.    Is this <u>X</u> Jury or _____ Non-Jury matter?

16.    Demand: $ <u>300,000,000.00</u>          Offer: $ <u>0</u>