# Exhibit I



**Pennsylvania**
**Department of Environmental Protection**

**SENT VIA U.S. MAIL AND ELECTRONIC MAIL**

March 6, 2025

Mr. Matthew Gordon
Vice President, Operations
Sunoco Pipeline, L.P.
525 Fritztown Road
Sinking Spring, PA 19608

Mr. C. Gus Borkland
Senior Director – Environmental Compliance,
Emergency Planning & Asset Security
Energy Transfer (R&M), LLC
100 Green Street
Marcus Hook, PA 19061

Re:     Administrative Order
        Energy Transfer Pipeline Release
        Upper Makefield Township
        Bucks County

Dear Mr. Gordon and Mr. Borkland:

On January 31, 2025, Energy Transfer informed the Department of Environmental Protection (DEP) of a release of refined petroleum products from its 14-inch Twin Oaks to Newark pipeline in the Mt. Eyre neighborhood of Upper Makefield Township, Bucks County. The pipeline is owned and/or operated by Sunoco Pipeline, L.P. This release has contaminated soil and groundwater and impacted the water supply of residents in the Mt. Eyre neighborhood.

Pursuant to Section 610 of the Clean Streams Law, 35 P.S. §691.610; Section 1917-A of the Administrative Code; and the rules and regulations adopted pursuant to each, DEP is issuing the attached administrative order directing Energy Transfer and Sunoco Pipeline to respond to the pipeline release and implement remedial actions in accordance with that order.

Any person aggrieved by this action may appeal the action to the Environmental Hearing Board (Board), pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. § 7514, and the Administrative Agency Law, 2 Pa.C.S. Chapter 5A.  The Board's address is:

> Environmental Hearing Board
> Rachel Carson State Office Building, Second Floor
> 400 Market Street
> P.O. Box 8457
> Harrisburg, PA 17105-8457

TDD users may contact the Environmental Hearing Board through the Pennsylvania Relay Service, 800.654.5984.

Mr. Matthew Gordon           - 2 -           March 6, 2025
Mr. C. Gus Borkland

Appeals must be filed with the Board within 30 days of receipt of notice of this action unless the appropriate statute provides a different time. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

A Notice of Appeal form and the Board's rules of practice and procedure may be obtained online at http://www.ehb.pa.gov or by contacting the Secretary to the Board at 717.787.3483. The Notice of Appeal form and the Board's rules are also available in braille and on audiotape from the Secretary to the Board.

IMPORTANT LEGAL RIGHTS ARE AT STAKE. YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD AT 717.787.3483 FOR MORE INFORMATION. YOU DO NOT NEED A LAWYER TO FILE A NOTICE OF APPEAL WITH THE BOARD.

**IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST BE FILED WITH AND RECEIVED BY THE BOARD WITHIN 30 DAYS OF RECEIPT OF NOTICE OF THIS ACTION.**

Sincerely,

Patrick L. Patterson
Regional Director

cc:     Mr. Nyman, Upper Makefield Township
        Dr. Damsker, Bucks County Health Department
        Mr. Lethcoe, Pipeline and Hazardous Materials Safety Administration,
           U.S. Department of Transportation
        Dr. Miller, Pennsylvania Department of Health
        Mr. Magge
        Mr. Brown, P.G.
        Mr. Langan, Esq.

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION**

**In the Matter of:**

| | | |
|---|---|---|
| Sunoco Pipeline, L.P. | : | Violation of the Clean Streams Law |
| 525 Fritztown Road | : | |
| Sinking Spring, PA 19608 | : | PA Pipeline - Twin Oaks–Newark Pipeline |
| | : | |
| Energy Transfer (R&M), LLC | : | |
| 100 Green Street | : | |
| Marcus Hook, PA 19061 | : | |

**<u>ORDER</u>**

NOW, this 6th day of March 2025, the Commonwealth of Pennsylvania Department of Environmental Protection ("Department"), has found and determined that:

A.      The Department is the agency with the duty and authority to administer the Land Recycling and Environmental Remediation Standards Act, the Act of May 19, 1995, P.L. 4, No. 1995-2, 35 P.S. §6026.101 et seq. ("Act 2"); and administer and enforce the Clean Streams Law, the Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001 ("Clean Streams Law"); Section 1917-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510-17 ("Administrative Code"); and the rules and regulations ("rules and regulations") promulgated thereunder.

B.      Sunoco Pipeline, L.P. is a foreign limited partnership doing business in Pennsylvania and maintains a mailing address of 525 Fritztown Road, Sinking Spring, PA 19608 ("Sunoco" or "SPLP"). Sunoco Logistics Partners Operations GP LLC (the "General Partner") is the general partner of SPLP.

C.       Energy Transfer (R&M), LLC is a Pennsylvania Business Corporation and maintains a headquarters address of 1735 Market St, Philadelphia, PA 19103 and a business address of 100 Green Street, Marcus Hook, PA 19061 ("Energy Transfer").  Energy Transfer is a parent entity of Sunoco.

D.       Energy Transfer and Sunoco (hereinafter, collectively, "Energy Transfer") own and operate numerous pipelines in Pennsylvania used to transport petroleum and natural gas products. Energy Transfer own and/or operate the Twin Oaks–Newark Pipeline that carries petroleum products from the Twin Oaks terminal in Aston, Delaware County, to the Newark terminal in New Jersey ("Twin Oaks-Newark Pipeline").

E.       On September 26, 2023, the Department received a complaint of a petroleum odor in well water at a property adjacent to the pipeline.  The Department responded to the complainant and concerns were communicated to Energy Transfer.  The Department confirmed that Energy Transfer investigated the complaint, including excavating a section of the pipeline and collecting soil and groundwater samples.  Energy Transfer reported that they did not identify a release from the pipeline.

F.       On or about September 30, 2024 the Department received additional complaints of petroleum odors in well water from other property owners in Upper Makefield Township and initiated further investigation.

G.       On January 31, 2025, Energy Transfer notified the Department of an unpermitted discharge of refined petroleum products from a section of the Twin Oaks–Newark Pipeline located in the Mt. Eyre neighborhood in Washington Crossing, Upper Makefield Township, Bucks County that Energy Transfer described as a "sleeved portion of the 14 inch Jet Fuel Line" ("Pipeline Release").

H.       Energy Transfer informed the Department that the section of the Twin Oaks–Newark Pipeline involved in the Pipeline Release had a sleeve that was installed over thirty years ago.

2

I.      The Pipeline Release has contaminated groundwater in the area of the release and separate-phase liquid petroleum, and dissolved concentrations of petroleum-related chemicals have been detected in potable groundwater wells in the Mt. Eyre neighborhood.

J.      Six properties in the Mt. Eyre neighborhood have petroleum separate-phase liquid or concentrations of Volatile Organic Compounds (VOCs) exceeding the Maximum Contaminant Levels ("MCLs").

K.      Five properties in the Mt. Eyre neighborhood have confirmed detections of VOCs that do not exceed MCLs.

L.      On February 13, 2025, Energy Transfer submitted to the Department a Notice of Intent to Remediate for the Pipeline Release indicating its intention to remediate the Pipeline Release using the Statewide health standard under Act 2.

**Applicable Law**

M.      The groundwater contaminated by the Pipeline Release is "waters of the Commonwealth" as that term is defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

N.      The refined petroleum products released to the environment by the Pipeline Release are "pollution" and "industrial waste" as those terms are defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

O.      Section 301 of the Clean Streams Law, 35 P.S. § 691.301, provides that no person shall place or permit to be placed or discharged or permit to flow, or continue to discharge or permit to flow, into any waters of the Commonwealth any industrial wastes.

P.      Section 307(a) of the Clean Streams Law, 35 P.S. § 691.307(a), provides that no person shall discharge or permit the discharge of industrial wastes in into any waters of the Commonwealth unless authorized by the rules and regulations of the Department or permitted by the Department.

Q.      Section 307(c) of the Clean Streams Law, 35 P.S. § 691.307(c), states that it is a nuisance to discharge industrial wastes without a permit or contrary to the rules and regulations of the Department.

R.      Section 401 of the Clean Streams Law, 35 P.S. § 691.401, makes it unlawful for any person or municipality to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person or municipality into any of the waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined.  Any such discharge is declared to be a nuisance.

S.      Section 402(a) of the Clean Streams Law, 35 P.S. § 691.401(a), provides that whenever the Department finds that any activity, not otherwise requiring a permit under the Clean Streams Law, including but not limited to the impounding, handling, storage, transportation, processing or disposing of materials or substances, creates a danger of pollution of the waters of the Commonwealth or that regulation of the activity is necessary to avoid such pollution, the Department may issue an order to a person regulating a particular activity.

T.      Section 402(b) of the Clean Streams Law, 35 P.S. § 691.402(b), provides, in part, that whenever a permit is required by rules and regulations issued pursuant to this section, it shall be unlawful for a person or municipality to conduct the activity regulated except pursuant to a permit issued by the Department.  Conducting such activity without a permit or conducting an activity contrary to the rules and regulations of the Department is declared to be a nuisance.

U.      Under 25 Pa. Code § 91.34(a), persons engaged in an activity which includes the impoundment, production, processing, transportation, storage, use, application, or disposal of pollutants shall take necessary measures to prevent the substances from directly or indirectly reaching waters of this Commonwealth through accident, carelessness, maliciousness, hazards of weather, or from another cause.

4

V.    Section 316 of the Clean Streams Law, 35 P.S. § 691.316, provides, in part, that whenever the Department finds that pollution or a danger of pollution is resulting from a condition which exists on land in the Commonwealth, the Department may order the landowner or occupier to correct the condition in a manner satisfactory to the Department.

W.    The release of refined petroleum products from a section of the Twin Oaks–Newark Pipeline as described in Paragraphs E through K, above, is a "release" of "regulated substance" as those terms are defined in Section 103 of Act 2, 35 P.S. § 6026.103.

X.    Section 106 of Act 2, 35 P.S. § 6026.106, provides that the environmental remediation standards established under Act 2 shall be used whenever site remediation is required under, among other laws, the Clean Streams Law and the Solid Waste Management Act, the Act of July 7, 1980, P.L. 380, No. 97, *as amended*, 35 P.S. § 6018.101 et seq.

**Unlawful Conduct**

Y.    Energy Transfer's unpermitted discharge of petroleum products during the Pipeline Release into waters of the Commonwealth as described in Paragraphs E through K, above, violates Sections 301, 307, 401, and 402 of the Clean Streams Law, 35 P.S. §§ 691.301, 691.307, 691.401, 691.402 and 25 Pa. Code § 91.34(a).

Z.    The violations described in Paragraph Y, above are unlawful conduct under Section 611 of the Clean Streams Law, 35 P.S. § 691.611; a statutory nuisance under Section 601 of the Clean Streams Law, 35 P.S. § 691.601; and subject Energy Transfer to civil penalties under Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

**ORDER**

NOW, THEREFORE, pursuant to Section 610 of the Clean Streams Law, 35 P.S. §691.610; Section 1917-A of the Administrative Code; and the rules and regulations adopted pursuant to each, it is hereby ORDERED that:

5

1.      **Interim Remedial Measures.**  Energy Transfer shall:

a.      Bottled Water.  Within five (5) calendar days after the date of this Order, Energy Transfer shall supply bottled water to all properties with potable groundwater wells within at least the Mt. Eyre neighborhood topographic watershed plus a minimum 500-foot buffer, in Upper Makefield Township, Bucks County that have concentrations of VOCs above background concentrations in the area and shall continue supplying bottle water to these properties until Energy Transfer obtains Department approval of the remedial action plan, required by Paragraph 2.b., below.

b.      Point of Entry Treatment Systems.  Within ten (10) calendar days after the date of this Order, Energy Transfer shall supply and install point-of-entry treatment ("POET") systems on the water supply for each property with a potable groundwater well within at least the Mt. Eyre neighborhood topographic watershed plus a minimum 500-foot buffer, in Upper Makefield Township, Bucks County that have concentrations of VOCs exceeding the MCLs and within five (5) days after installation, perform confirmatory sampling of groundwater collected post-treatment from a potable point of use location at the affected property to demonstrate attainment of Statewide health standard medium-specific concentrations (MSCs) for VOCs.

c.      Additional Properties.

    i.  Within two (2) calendar days after discovering any additional potable groundwater wells on properties within the Mt. Eyre neighborhood topographic watershed plus a minimum 500-foot buffer, in Upper Makefield Township, Bucks County that contain VOCs above the MCLs and the property does not have a POET capable of treating VOCs to meet the MCLs, notify the property owner/occupant within 24 hours and supply bottled water to the property.

    ii.  Within ten (10) calendar days after discovering any additional potable groundwater wells on properties within the Mt. Eyre neighborhood topographic

6

watershed plus a minimum 500-foot buffer, in Upper Makefield Township, Bucks County that contain VOCs above the MCLs and the property does not have a POET capable of treating VOCs to meet Statewide health standard MSCs, supply and install POET systems on the water supply and within five (5) days after installation, perform confirmatory sampling of groundwater collected post-treatment from a potable point of use location at the affected property to demonstrate attainment of Statewide health standard MSCs for VOCs.

d.      Energy Transfer shall sample and maintain the POET, as necessary.  Maintenance of the POET will include quarterly sampling of the inlet, midport and outlet of the POET to determine whether breakthrough of the POET has been detected and, if warranted, the replacement of a carbon filter, until the Department determines that a POET is no longer needed.

e.      Daily Reports.  Beginning one day after the date of this Order and continuing until the Department notifies Energy Transfer in writing that a different period of time is acceptable, Energy Transfer shall submit to the Department an electronic daily summary progress report of the activities performed by Energy Transfer regarding the Pipeline Release.  The report shall include the following:

i. Numbers to date of potable wells sampled, laboratory results received, and scheduled potable well sampling.

ii. Numbers to date of tested potable wells exceeding Statewide health standard MSCs for VOCs, and tested potable wells with detections of VOCs that do not exceed MSCs.

iii. Numbers to date of POET installed by Energy Transfer, POET installed by others that are known by Energy Transfer, and planned POET by Energy Transfer and by others.

7

iv.  A list of properties, to date, known to Energy Transfer with operating POET or other treatment systems for VOCs, a list of properties with VOC detections that do not have POET or other treatment systems, a list of properties with planned POET, and a list of properties with VOC detections where Energy Transfer does not know whether the property has a POET.

v.  Numbers to date of properties that have requested POET from Energy Transfer and where Energy Transfer has declined to install or pay for the installation of POET.

vi.  A list of properties, to date, that have requested POET and where Energy Transfer has declined to install or pay for the installation of POET, and the reasoning for declining.

vii.  Tables of all property well sampling analytical results, property well gauging results, and wellhead field screening results.

viii.  Site characterization activities performed.

ix.  Site remediation activities performed.

f.  By March 14, 2025, Energy Transfer shall submit to the Department all laboratory reports for all property well sampling received by Energy Transfer to that date.

g.  Beginning March 21, 2025 and continuing on a weekly basis, Energy Transfer shall submit to the Department all laboratory reports for all property well sampling received in the preceding 7-day period.

h.  By March 19, 2025, Energy Transfer shall submit to the Department an interim remedial action plan, describing soil, groundwater, surface water, and vapor intrusion remedial measures, and an implementation schedule.  The plan shall describe proposed short-term measures to protect human health and the environment.

i.  By April 2, 2025, Energy Transfer shall submit to the Department a vapor intrusion investigation progress report describing activities to date, results, mitigation measures (if applicable), plans for further evaluation, and a schedule for mitigation and evaluation consistent with the Land Recycling Program Technical Guidance Manual, Section IV (the Department Doc. 261-0300-101).

2.  **Remediation.**

a.  Energy Transfer shall remediate the release of regulated substances from the Pipeline Release in accordance with the remediation standards of Act 2 and the requirements of this Order.

b.  By March 14, 2025, Energy Transfer shall submit to the Department a proposed implementation schedule for the following:

i.  Submission of a work plan for characterization of the nature, extent, direction, rate of movement, volume and composition of regulated substances released into the environment from the Pipeline Release in accordance with Act 2;

ii.  Completing work to characterize the nature, extent, direction, rate of movement, volume and composition of regulated substances released into the environment from the Pipeline Release in accordance with Act 2 and submitting a report describing the interim characterization of the nature, extent, direction, rate of movement, volume and composition of regulated substances released into the environment from the Pipeline Release in accordance with the remediation standard(s) of Act 2

iii.  Submitting a plan addressing all remedial actions to address the release of regulated substances released into the environment from the Pipeline Release to meet the remediation standard(s) of Act 2

9

iv.  Submitting a final report demonstrating attainment of Act 2 cleanup standard(s) for the regulated substances released into the environment from the Pipeline Release in accordance with the requirements of Act 2

v.  Submitting to the Department remedial action progress reports once every ninety (90) days describing characterization activities and results, remedial action implementation and results, public involvement activities, planned site characterization work and remedial actions.

c.  Upon Department approval of the implementation schedule required by Paragraph 2.b., above, Energy Transfer shall implement the work in accordance with the deadlines set forth in the Department-approved implementation schedule.

d.  By March 21, 2025, Energy Transfer shall submit to the Department and Upper Makefield Township a Public Involvement Plan ("PIP").  The PIP will be subject to review and comment by the Department and the Township.  Energy Transfer shall respond to comments and revise the PIP within 14 days of receipt of comments by the Department or the Township.  The PIP shall include, at a minimum, the following elements:

i.  Public access at convenient location(s) for document reviews.  Hardcopies of documents shall be available at one or more locations.  Documents shall also be available on an Energy Transfer–hosted website.  Documents available for public review shall include, at a minimum, all site characterization and remedial action plans and reports enumerated by this order, all Act 2 reports and requests, all Department decision and comment letters, and all addendums and responses to Department decision and comment letters.

ii.  One or more Energy Transfer points of contact to address questions and receive comments from the community and Township.

    iii.   A description and schedule for public hearings and meetings.

    iv.   An outreach plan to inform the community and Township of significant project activities and the availability of documents for public review, as defined in (a) above.

    v.   Specifications for submittal of public comments on the documents defined in (a) above, including methods for submitting comments and comment periods.

3. **Department approval.** For any document required under this Order, the Department will approve the document or advise Energy Transfer of deficiencies in writing. If the Department advises Energy Transfer of deficiencies, Energy Transfer shall address the deficiencies in writing within forty-five (45) days after notice from the Department, or within such additional time as determined by the Department and set forth in the notice of deficiency. Energy Transfer's failure to address any deficiency identified by the Department in writing shall violate this Order.

4. **Correspondence.** All correspondence with the Department concerning this Order shall be addressed to:

> C. David Brown P.G.
> Environmental Program Manager
> Environmental Cleanup and Brownfields
> Department of Environmental Protection, Southeast Regional Office
> 2 East Main Street
> Norristown, PA 19401
> cdbrown@pa.gov

> With copy to:

> Alex M. Langan
> Assistant Counsel
> Pennsylvania Department of Environmental Protection
> Southeast Regional Office
> Office of Chief Counsel
> 2 East Main Street
> Norristown, PA 19401
> allangan@pa.gov

11

and

Upper Makefield Township
1076 Eagle Road
Newtown, PA 18940
manager@uppermakefield.org

Additionally, forms and other submissions submitted to the Department pursuant this Order may be

submitted electronically by using the Department's "Public Upload with Electronic Payment" platform

at the following link: https://www.dep.pa.gov/DataandTools/ElectronicSubmissions/Pages/default.aspx.

Any person aggrieved by this action may appeal the action to the Environmental Hearing Board (Board), pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. § 7514, and the Administrative Agency Law, 2 Pa.C.S. Chapter 5A. The Board's address is:

Environmental Hearing Board
Rachel Carson State Office Building, Second Floor
400 Market Street
P.O. Box 8457
Harrisburg, PA 17105-8457

TDD users may contact the Environmental Hearing Board through the Pennsylvania Relay Service, 800-654-5984.

Appeals must be filed with the Board within 30 days of receipt of notice of this action unless the appropriate statute provides a different time. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

A Notice of Appeal form and the Board's rules of practice and procedure may be obtained online at www.ehb.pa.gov or by contacting the Secretary to the Board at 717-787-3483. The Notice of Appeal form and the Board's rules are also available in braille and on audiotape from the Secretary to the Board.

IMPORTANT LEGAL RIGHTS ARE AT STAKE. YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD AT 717-787-3483 FOR MORE INFORMATION. YOU DO NOT NEED A LAWYER TO FILE A NOTICE OF APPEAL WITH THE BOARD.

MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY

TO THE BOARD AT 717-787-3483 FOR MORE INFORMATION. YOU DO NOT NEED A

LAWYER TO FILE A NOTICE OF APPEAL WITH THE BOARD.

**IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST BE FILED**

**WITH AND RECEIVED BY THE BOARD WITHIN 30 DAYS OF RECEIPT OF**

**NOTICE OF THIS ACTION.**

FOR THE COMMONWEALTH OF
PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

Patrick L. Patterson
Regional Director

13